1 WILLIAM H. PARISH (#95913; whparish@parishsmall.com)
**PARISH & SMALL**
2 1919 Grand Canal Boulevard, Suite A-5
Stockton, CA 95207
3 Telephone: (209) 952-1992
Facsimile: (209) 952-0250
4

5

6                                             E-filing

7                          UNITED STATES DISTRICT COURT

8                         NORTHERN DISTRICT OF CALIFORNIA

9                             SAN FRANCISCO DIVISION                    *MEJ*

10 _____          **CV 10 1722**
   CULLEN BYRNE, on behalf of himself and  ) Case No.:
11 all others similarly situated,           )
                                            )
12                          Plaintiff,      ) **CLASS ACTION COMPLAINT FOR**
                                            ) **VIOLATION OF THE ANTITRUST LAWS**
13         v.                               ) **– INDIRECT PURCHASERS**
                                            )
14 SONY CORPORATION; SONY OPTIARC           )
   AMERICA INC.; SONY OPTIARC INC.;         )
15 SONY NEC OPTIARC INC.; HITACHI,          )
   LTD.; LG ELECTRONICS INC.; HITACHI-      )
16 LG DATA STORAGE, INC.; TOSHIBA           ) **JURY TRIAL DEMANDED**
   CORPORATION; SAMSUNG                     )
17 ELECTRONICS CO., LTD.; and TOSHIBA       )
   SAMSUNG STORAGE TECHNOLOGY               )
18 CORPORATION;                             )
                          Defendants.       )
19                                          )
                                            )
20                                          )
                                            )
21                                          )
                                            )
22 _____

23

24

25

26

27

28
_____
   CLASS ACTION COMPLAINT

## **TABLE OF CONTENTS**

I. NATURE OF THE ACTION ...............................................................................................1

II. JURISDICTION AND VENUE .........................................................................................2

III. PARTIES ...........................................................................................................................4

    A. Plaintiff .................................................................................................................4

    B. Defendants ............................................................................................................4

    C. Agents and Co-Conspirators .................................................................................7

IV. CLASS ACTION ALLEGATIONS ...................................................................................8

V. PASS-THROUGH OF OVERCHARGE TO CONSUMERS.............................................10

VI. FACTUAL ALLEGATIONS ...........................................................................................12

    A. Optical Disk Drive Technology............................................................................12

    B. Industry Background .............................................................................................14

    C. Opportunity for Collusion.....................................................................................16

        1. Market Concentration and Joint Ventures .....................................................16

        2. Joint Venture Collaboration...........................................................................17

        3. Barriers to Entry ...........................................................................................18

        4. Trade Associations and Business Organizations ...........................................18

        5. Standardization of Optical Disk Drive Products ...........................................19

    D. History of Collusion .............................................................................................20

        1. Previous Antitrust Violations ........................................................................20

        2. Antitrust Violations concerning Optical Disk Drive Products .....................22

VII. FRAUDULENT CONCEALMENT ..................................................................................25

VIII. INTERSTATE COMMERCE ...........................................................................................26

IX. CAUSES OF ACTION......................................................................................................27

    First Claim for Relief (Violation of the Sherman Antitrust Act)...........................................27

    Second Claim (Violation of the California Cartwright Act) .................................................28

    Third Claim (Violation of the California Unfair Competition Law).....................................30

    Fourth Claim (Violation of State Antitrust and Unfair Competition Law) ...........................31

    Fifth Claim (Violation of State Consumer Protection and Unfair Competition Laws)........32

Sixth Claim (Unjust Enrichment and Disgorgement of Profits)...........................................34

PRAYER FOR RELIEF ..................................................................................................................34

1       Plaintiff CULLEN BYRNE brings this lawsuit as a class action on behalf of individuals and

2   entities who purchased Optical Disk Drive Products, as defined below, INDIRECTLY from

3   Defendants, their subsidiaries, agents, or co-conspirators during the period from at least October 1,

4   2005 through the present (hereinafter the "Class Period"). Plaintiffs, for their complaint against all

5   Defendants named herein, demand trial by jury of all claims properly triable thereby, and complain

6   and allege as follows:

7   **I.      NATURE OF THE ACTION**

8       1.      This case arises out of a long-running conspiracy from at least October 1, 2005 until

9   the present ("the Class Period"), among Defendants and their co-conspirators, with the purpose and

10  effect of fixing, raising, maintaining and stabilizing prices for Optical Disk Drive Products sold

11  indirectly to Plaintiff and other indirect purchasers who purchased products in which Optical Disk

12  Drive Products were a significant component in the United States.

13      2.      Defendants, the leading manufacturers of optical disk drives, and their co-

14  conspirators formed an international cartel to illegally restrict competition in the Optical Disk Drive

15  Product market, which included targeting and burdening indirect purchasers who made purchases in

16  the United States. During the Class Period, the conspiracy affected billions of dollars of commerce

17  throughout the United States. The conspiracy included communications and meetings in which

18  Defendants agreed to eliminate competition and fix the prices for Optcal Disk Drive Products. As a

19  result of Defendants' price-fixing conspiracy, Plaintiffs have been injured in their business and

20  property by paying more for Optical Disk Drive Products than Plaintiffs otherwise would have paid

21  in the absence of Defendants' conspiracy.

22      3.      An optical disk drive is a disk drive that uses laser light (or electromagnetic

23  wavelength) to read and/or write data to or from an optical disk, such as a Compact Disc (CD), a

24  Digital Video Disc (DVD), or the more recently-developed Blu-Ray Disc (BD). Optical disk drives

25  are an integral part of stand-alone consumer electronics appliances such as CD players/recorders,

26  DVD players/recorders, and Blu-Ray Disc players/recorders that are used to store and play music

27  and movies. Optical disk drives are also widely used in computers to read and write data for a

28  variety of uses, including software programs and data compilations, and to store and play music and

1   video in much the same way as in stand-alone consumer electronics products with optical disk

2   drives.  As a result, in computers, optical disk drives (along with Optical Disk Drive Products

3   drives) have largely replaced "floppy" disk drives and the even-older tape drives that used magnetic

4   disks or tapes to record and store data.  And in consumer electronics, products with optical disk

5   drives (e.g. CD players and DVD players/recorders) have also displaced many of the consumer

6   electronics products previously used to record and play music and video (e.g. cassette decks,

7   VCRs).

8       4.      As used herein, Optical Disk Drive Products include both optical disk drives (e.g.

9   CD drives, DVD drives, Blu-ray drives) manufactured by any of the named Defendants or their

10  affiliates, subsidiaries or co-conspirators, as well as products that contain optical disk drives (e.g.

11  DVD players, video game consoles like the Sony PlayStation 3, personal computers with DVD

12  drives) manufactured by any of the named Defendants or their affiliates, subsidiaries or co-

13  conspirators.  Many of the Defendants are not only the major manufacturers and sellers of optical

14  disk drives, but they are also some of the largest manufacturers and sellers of computers and

15  consumer electronics products that contain optical disk drives.

16      5.      Plaintiffs bring this action seeking treble damages, injunctive relief, and costs of suit

17  (including reasonable attorneys fees) under Section 1 of the Sherman Act, 15 U.S.C. § 1, and

18  Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover for the injuries that Plaintiff and all others

19  similarly situated sustained as a result of the Defendants' conspiracy to fix, raise, maintain and

20  stabilize the prices of Optical Disk Drive Products.

21      6.      Except where specifically stated otherwise, all allegations herein are on information

22  and belief.

23  **II.    JURISDICTION AND VENUE**

24      7.      This complaint is filed pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26,

25  seeking injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.  In addition,

26  plaintiff and the class seek damages for violations of state antitrust and consumer protection laws.

27  Plaintiff and the class also seek to recover the costs of suit, including reasonable attorneys' fees, for

28  the injuries suffered as a result of the Defendants' violations of those laws.

1      8.      Jurisdiction of this Court is founded on Sections 4 and 16 of the Clayton Act, 15

2  U.S.C. § 15, 26 for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and on 28 U.S.C. §§

3  1331, 1337. This Court also has jurisdiction over the state law claims under 28 U.S.C. § 1332

4  because the amount in controversy for the Class exceeds $5 million

5      9.      Venue as to defendants is proper in this district pursuant to 15 U.S.C. §§ 15(a), 22,

6  and 28 U.S.C. § 1391(b), (c), in that more than one defendant resides in the judicial district, is

7  licensed to do business and/or is doing business in this judicial district. The interstate trade and

8  commerce described herein has been carried out, in part, within this district.

9      10.     Defendants are subject to this Court's jurisdiction because of their nationwide

10  contacts and other activities, as well as their contacts and other activities with the State of

11  California.

12      11.     Defendants' conspiracy to fix the price of Optical Disk Drive Products substantially

13  affected commerce throughout the United States and in each of the states identified herein because

14  Defendants, directly or through their agents, engaged in activities affecting each such state.

15  Defendants have purposefully availed themselves of the laws of each of the states identified herein

16  in connection with their activities relating to the production, marketing, and sale of Optical Disk

17  Drive Products. Defendants produced, promoted, sold, marketed, and/or distributed Optical Disk

18  Drive Products, thereby purposefully profiting from access to indirect-purchaser consumers in each

19  such state. Defendants also contracted to supply or obtain goods or revenue related to the business

20  for Optical Disk Drive Products. As a result of the activities described herein, Defendants:

21      a.     Caused damage to the residents of the states identified herein;

22      b.     Caused damage in each of the states identified herein by acts or omissions

23             committed outside each such state by regularly doing or soliciting business in

24             each such state;

25      c.     Engaged in persistent courses of conduct within each such state and/or

26             derived substantial revenue from the marketing of Optical Disk Drive

27             Products or the products in which they are used in each such state (and

28             services relating to such marketing); and

d.      Committed acts or omissions that they knew or should have known would cause damage (and did, in fact, cause such damage) in each such state while regularly doing or soliciting business in each such state, engaging in other persistent courses of conduct in each such state, and/or deriving substantial revenue from the marketing of Optical Disk Drive Products or the products in which they are used in each such state.

12.      The conspiracy described herein affected adversely every person nationwide and in each of the states identified in this Complaint who indirectly bought Defendants' Optical Disk Drive Products. Defendants' conspiracy has resulted in an adverse monetary effect on indirect-purchasers in each state identified herein.

13.      Prices of Optical Disk Drive Products in each state can be manipulated by conspirators within that state, outside of it, or both. Without enforcing the antitrust and/or consumer protection laws of each of the states identified herein, companies that break the law will go unpunished. Defendants knew that commerce in each of the states identified herein would be adversely affected by implementing their conspiracy.

## III.   PARTIES

### A.   Plaintiff

14.      Plaintiff CULLEN BYRNE ("Plaintiff") is an individual located in Turlock, California. During the Class Period, plaintiff purchased Optical Disk Drive Products indirectly from one or more Defendants or their controlled subsidiaries. As a result of the conspiracy, plaintiff has been economically injured in that the prices he paid for Optical Disk Drive Products have been artificially raised to anti-competitive levels by Defendants.

### B.   Defendants

15.      Defendant **Sony Corporation** is a business entity organized under the laws of Japan, with its principal place of business located at 1-7-1, Konan, Minato-Ku, TKY 108-0075, Japan. During the Class Period, Sony manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States.

16.     Defendant **Sony Optiarc America Inc.**, formerly known as Sony NEC Optiarc Inc., is a wholly owned subsidiary of Sony Optiarc Inc. Sony Optiarc America Inc. is a Delaware corporation with its principal place of business located at 1730 N. First Street, San Jose, California 95112. Sony Optiarc America Inc. was originally established as a joint venture in April 2006 before Sony announced that it would take over NEC's 45% share on September 11, 2008. During the Class Period, Sony Optiarc America Inc. manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States.

17.     Defendant **Sony Optiarc Inc.** is a Japanese company with its headquarters located at 4-16-1 Okata, Atsugi-shi, Kanagawa 243-0021, Japan. During the Class Period, Sony Optiarc Inc. manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States.

18.     Defendant **Sony NEC Optiarc Inc.** was a Japanese company with its headquarters located at 4-16-1 Okata, Atsugi-shi, Kanagawa 243-0021, Japan. Defendant Sony NEC Optiarc Inc. was created on April 3, 2006 as a joint venture between defendants Sony Corp. and NEC Corp. in which Sony Corp. had a 55% interest and NEC Corp. had a 45% interest. Sony Corp. purchased NEC Corp.'s interest in Sony NEC Optiarc Inc. in 2008 and renamed it Sony Optiarc Inc. During the Class Period, Sony NEC Optiarc Inc. manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States.

19.     Defendants Sony Corporation, Sony Optiarc America Inc., Sony NEC Optiarc Inc., and Sony Optiarc Inc. are referred to individually and collectively herein as **"Sony."**

20.     Defendant **Hitachi, Ltd.**, is a business entity organized under the laws of Japan with its principal executive office at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo 100-8280, Japan. Hitachi, Ltd. controls an integrated global enterprise comprised of itself and other entities including defendant Hitachi-LG Data Storage, Inc. During the Class Period, Hitachi, Ltd., manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States.

21.     Defendant **LG Electronics Inc. ("LG")** is a business entity organized under the laws of Korea, with its principal place of business at 26/F Twin Tower South 20, Yeouido-Dong, Yeoungdeungpo-Gu, Seoul, SEO 150-721, South Korea. LG controls an integrated global enterprise comprised of itself and other entities including defendant Hitachi-LG Data Storage, Inc.

1  During the Class Period, LG manufactured, sold and/or distributed Optical Disk Drive Products
2  throughout the United States.

3      22.     Defendant **Hitachi-LG Data Storage, Inc.** is a business entity organized under the
4  laws of Japan with its principal place of business located at 4F MSC Center Building, 22-23 Kaigan
5  3-Chome, Minato-Ku, Tokyo, Japan, 108-0022. Hitachi-LG Data Storage, Inc. is a joint venture
6  formed in January 2001 and is owned 51% by defendant Hitachi and 49% by defendant LG. During
7  the Class Period, Hitachi-LG Data Storage, Inc. manufactured, sold and/or distributed Optical Disk
8  Drive Products throughout the United States.

9      23.     Defendant **Toshiba Corporation ("Toshiba")** is a business entity organized under
10  the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo
11  105-8001, Japan. Toshiba Corp. controls an integrated global enterprise comprised of itself and
12  other entities including defendant Toshiba Samsung Storage Technology Corp. During the Class
13  Period, Toshiba manufactured, sold and/or distributed Optical Disk Drive Products throughout the
14  United States.

15      24.     Defendant **Samsung Electronics Co. Ltd. ("Samsung")** is a business entity
16  organized under the laws of South Korea, with its principal place of business at Samsung Main
17  Building 250, Taepyeongno 2-ga, Jung-gu, Seoul 100-742, Korea. Samsung controls an integrated
18  global enterprise comprised of itself and other entities including defendant Toshiba Samsung
19  Storage Technology Corp. During the Class Period, Samsung manufactured, sold and/or distributed
20  Optical Disk Drive Products throughout the United States.

21      25.     Defendant **Toshiba Samsung Storage Technology Corp.** is a business entity
22  organized under the laws of Japan with its principal place of business located at Solid Square 580,
23  Horikawacho, Saiwai-Ku, Kawasaki, KNG 212-0013, Japan. Toshiba Samsung Storage
24  Technology Corp. is a joint venture formed in 2004 and owned 51% by defendant Toshiba and 49%
25  by defendant Samsung. During the Class Period, Toshiba Samsung Storage Technology Corp.
26  manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States.

27      26.     On information and belief, other partnerships, corporations, or other business
28  entities, unknown to Plaintiff, are co-conspirators with Defendants in their unlawful restraint of

1  trade.  These other co-conspirators have facilitated, adhered to, participated in, and/or

2  communicated with others regarding the conspiracy.

3      27.    The conduct alleged herein was Defendants' conduct or actions ordered or done by

4  Defendants' officers, agents, employees, or representatives, while engaged in the usual management

5  of Defendants' business.

6      **C.    Agents and Co-Conspirators**

7      28.    Various persons that are not named as Defendants herein have participated as co-

8  conspirators in the violations alleged herein and have performed acts and made statements in

9  furtherance thereof.  Plaintiffs reserve the right to name some or all of these persons as Defendants

10  at a later date.

11     29.    Co-conspirator **Koninklijke Philips Electronics N.V. ("Philips")** is a business

12  entity organized under the laws of The Netherlands, with its principal place of business at

13  Groenewoudseweg 1, Eindhoven 5621 BA, The Netherlands.  Philips controls an integrated global

14  enterprise comprised of itself and other entities including defendant Philips & Lite-On Digital

15  Solutions Corporation.  During the Class Period, Philips manufactured, sold and/or distributed

16  Optical Disk Drive Products throughout the United States.

17     30.    Co-conspirator **Lite-On IT Corporation ("Lite-On")** is a business entity organized

18  under the laws of Taiwan, with its principal place of business at 12-15F, 392, Jui Kuang Road,

19  Taipei City, TAP 11492, Taiwan.  Lite-On controls an integrated global enterprise comprised of

20  itself and other entities including defendant Philips & Lite-On Digital Solutions Corporation.

21  During the Class Period, Lite-On manufactured, sold and/or distributed Optical Disk Drive Products

22  throughout the United States.

23     31.    Co-conspirator **Philips & Lite-On Digital Solutions Corporation** is a business

24  entity organized under the laws of Taiwan, and a joint venture between Koninklijke Philips

25  Electronics N.V. and Lite-On IT Corporation established in March 2007, with its principal place of

26  business located at 16F, 392, Jui Kuang Road, Taipei City, TAP 11492, Taiwan.  During the Class

27  Period, Philips & Lite-On Digital Solutions Corporation manufactured, sold and/or distributed

28  Optical Disk Drive Products throughout the United States.

32.     Co-conspirator **Philips & Lite-On Digital Solutions USA, Inc.** is a Delaware corporation with its principal place of business located at 42000 Christy Street, Fremont, California 94538. During the Class Period, Philips & Lite-On Digital Solutions USA manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States.

33.     Whenever in this complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

34.     Defendants are also liable for acts done in furtherance of the alleged conspiracy by companies they acquired through mergers and acquisitions.

35.     Each of the Defendants named herein acted as the agent of, co-conspirator with, or joint venturer of the other Defendants with respect to the acts, violations and common course of conduct alleged herein. Each Defendant that is a subsidiary of a foreign parent acts as the United States agent for Optical Disk Drives and/or Optical Disk Drive Products made by its parent company.

## IV.     CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action both on behalf of itself, and as a class action pursuant to Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), on behalf of the following class (the "Class").

> All individuals and entities who, during the period from October 1, 2005 through the present (the "Class Period"), who purchased Optical Disk Drive Products in the United States indirectly from the defendants or their subsidiaries. Excluded from the Class are defendants and their parents, subsidiaries, affiliates, and all governmental entities.

37.     Plaintiffs seek both injunctive relief and monetary damages on behalf of a class of all persons and/or entities who indirectly purchased Optical Disk Drive Products manufactured and/or sold by one or more of the Defendants for their own use and not for resale during the Class Period.

38.     The Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, Plaintiff believes that the members of the Class are

1  geographically dispersed throughout the United States, and that joinder of all Class members would

2  be impracticable. While the exact number of Class members is unknown to Plaintiff at this time,

3  Plaintiff believes that there are, at least, thousands of members of the Class and that their identities

4  can be learned from Defendants' books and records.

5        39.    Plaintiff's claims are typical of the claims of the other members of the Class because

6  plaintiff indirectly purchased Optical Disk Drive Products from one or more of the defendants.

7        40.    Plaintiff and the members of the Class indirectly purchased Optical Disk Drive

8  Products at artificially maintained, non-competitive prices established by the actions of Defendants

9  and their unnamed co-conspirators in connection with the restraint of trade alleged herein. Plaintiff

10  and the members of the Class have all sustained damage in that they paid inflated prices for Optical

11  Disk Drive Products due to Defendants' conduct in violation of federal law as complained of herein.

12        41.    Plaintiff will fairly and adequately protect the interests of the members of the Class

13  and has retained counsel competent and experienced in class action and antitrust litigation.

14        42.    Defendants have acted or refused to act on grounds generally applicable to the class,

15  thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to

16  the Class as a whole.

17        43.    Common questions of law and fact exist as to all members of the Class and

18  predominate over any questions solely affecting individual members of the Class. Among the

19  questions of law and fact common to the Class are:

20            (a)    Whether Defendants engaged in a contract, combination or conspiracy among

21                  themselves to fix, maintain, or stabilize the price of Optical Disk Drive

22                  Products sold in the United States;

23            (b)    Whether the conduct of Defendants caused the prices of Optical Disk Drive

24                  Products to be artificially inflated;

25            (c)    Whether defendants engaged in a contract, combination, and/or conspiracy to

26                  restrict output of ODD Products sold in the United States;

27            (d)    Whether Defendants' conduct caused injury to the members of the Class and,

28                  if so, the proper measure of damages;

(e)     Whether plaintiff and the other members of the Class are entitled to, among other things, injunctive relief, and if so, the nature and extent of such injunctive relief; and

(f)     Whether Defendants undertook actions to conceal the unlawful contract, combination or conspiracy described herein.

44.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable.  The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.  A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

## V.     PASS-THROUGH OF OVERCHARGE TO CONSUMERS

45.     Defendants' conspiracy to raise, fix, or maintain the prices of Optical Disk Drive Products at artificial levels resulted in harm to Plaintiffs and the indirect-purchaser consumer class alleged herein because it resulted in them paying higher prices for products containing Optical Disk Drive Products than they would have in the absence of Defendants' conspiracy.  The entire overcharge for Optical Disk Drive Products at issue was passed on to Plaintiffs and members of the indirect-purchaser class.

46.     149.     Optical Disk Drive Products is a commodity product, with functionally equivalent products available from the Defendants, which manufacture Optical Disk Drive Products pursuant to standard specifications and sizes.

47.     150.     The Optical Disk Drive Products market is dominated by a handful of leading manufacturers – namely, Defendants in this case.

48.     151.     Defendants operate manufacturing factories called fabrication plants or "fabs".  Those fabrication plants use "wafers" of silicon, onto which are fabricated patterns of semiconductors that form individual NAND memory chips, called "dice."  The dice are tested and the wafers are then cut into individual die.  The fundamental cost structure of Optical Disk Drive

1 Products is based on the fixed costs for fabs, the cost to produce a semiconductor wafer and the
2 yield of good die from each wafer.

3    49.    Optical Disk Drive Products are normally purchased by consumers as a substantial
4 part of an electronic device. When Optical Disk Drive Products are purchased by consumer as part
5 of an electronic device, it is a distinct, physically-discrete hardware element of the end-use product
6 and is identifiable by a specific, discrete part or model number that permits tracing. Optical Disk
7 Drive Products are identifiable and traceable throughout the chain of the distribution to the end user
8 and does not undergo alterations as it moves through the chain of distribution.

9    50.    The inflated prices of Optical Disk Drive Products resulting from Defendants' price-
10 fixing conspiracy have been passed on to Plaintiffs and the other Class members by direct-purchaser
11 manufacturers, distributors, and retailers.

12    51.    Optical Disk Drive Products make up a substantial majority of the cost of electronic
13 devices in which Optical Disk Drive Products are a significant component of that device.

14    52.    In retailing, it is common to use a "markup rule." The retail price is set as the
15 wholesale cost plus a percentage markup designed to recover non-product costs and to provide a
16 profit. This system guarantees that increases in costs to the retailer will be passed on to end buyers.

17    53.    The economic and legal literature has recognized that unlawful overcharges in a
18 component normally result in higher prices for products containing that price-fixed component. As
19 Professor Herbert Hovenkamp, a noted antitrust scholar, has stated in his treatise, FEDERAL
20 ANTITRUST POLICY, THE LAW OF COMPETITITON AND ITS PRACTICE (1994) at 564:

21       A monopoly overcharge at the top of a distribution chain generally results
         in higher prices at every level below. For example if production of
22       aluminum is monopolized or cartelized, fabricators of aluminum cookware
         will pay higher prices for aluminum. In most cases they will absorb part
23       of these increased costs themselves and pass part along to cookware
         wholesalers. The wholesalers will charge higher prices to the retail stores,
24       and the stores will do it once again to retail consumers. Every person at
         every stage in the chain likely will be poorer as a result of the monopoly
25       price at the top.
26
27       Theoretically, one can calculate the percentage of any overcharge that a
         firm at one distributional level will pass on to those at the next level.
28

54. Similarly, two other antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule."

55. Other factors that lead to the pass-through of overcharges include: (i) whether price changes are frequent; (ii) the duration of the anti-competitive overcharge; (iii) whether pricing decisions are based on cost; (iv) whether the overcharge affects variable, as opposed to overhead, costs; (v) whether the resellers' production technology is uniform; (vi) whether the reseller supply curve exhibits a high degree of elasticity; and (vii) whether the demand of the resellers is inelastic. All of these factors were present in the Optical Disk Drive Products market during the Class Period. The precise amount of such an impact on the prices of products containing Optical Disk Drive Products can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supracompetitive charge passed-through the chain of distribution.

56. Plaintiffs and other indirect-purchasers have been forced to pay supracompetitive prices for products in which Optical Disk Drive Products is a substantial component. These inflated prices have been passed on to them by direct-purchaser manufacturers, distributors, and retailers. Those overcharges have unjustly enriched Defendants.

## VI.    FACTUAL ALLEGATIONS

### A.    Optical Disk Drive Technology

57. Optical discs contain microscopic pits where data are stored. These pits are made from a crystalline metal alloy and are usually pressed into the disc in a spiral arrangement, starting at the center of the disc. Once a disc containing information is inserted into the optical disk drive, the disc spins while a lens inside the device guides a semiconductor laser beam over the disc and a photodiode detects the light reflected from the disc's bumps and pits. The laser moves outward from the center of the disc, scanning over the disc's surface. Then the photodiode reads the light's

1  reflection as a binary code (a series of ones and zeros) that the computer translates into usable data.

2  Changes in the intensity of the beams as the lasers hit the pits are detected and translated into

3  electrical signals. The more pits that can be packed onto the disc, the more data the disc can store.

4  The pits are approximately 0.8 micrometers on CDs, 0.4 micrometers on DVDs, and 0.15

5  micrometers on BDs. Reading the different disc formats requires the optical disk drive to have

6  lasers of different wavelengths. Blu-ray disc players use a shorter wavelength laser, which is blue-

7  violet, to read discs. Additional layers can be added to the disc as well, increasing storage capacity.

8  In addition to reading discs, optical disk drive's can write and rewrite on the disc, depending on the

9  technology of the drive and accompanying disc.

10      58.     When a recordable disc (e.g., CD-R, DVD-R or BD-R) is inserted into an optical

11  disk drive that has the ability to record data, the optical disk drive's laser is used to selectively heat

12  parts of the organic photosensitive dye layer. By exposing the disc to light with the laser, the

13  reflective properties of the disc's surface change, which causes the photodiode to recognize these

14  changes as bumps and pits and read the new information on the disc.

15      59.     Optical disk drives include half-height and slim models. Half height optical disk

16  drives are thicker and generally incorporated into desktop computer towers. Slim optical disk

17  drives are thinner and generally incorporated into laptop computers. As laptop computers have

18  become more popular with consumers, demand for slim optical disc drives has increased and is

19  expected to overtake half-height demand over the next five years. An optical disk drive is a disk

20  drive that uses laser light or electromagnetic waves as part of the process of reading or writing data

21  to or from optical disks. Some drives can only read from disks, but other recent drives are

22  commonly both readers and recorders. Recorders are sometimes called "burners" or "writers."

23  Compact discs, DVDs, and Blu-Ray disks are common types of optical media which can be read

24  and recorded by optical disk drives.

25      60.     An optical drive is about the size of a thick book. The front of the drive has a small

26  Open/Close button that ejects and retracts the drive bay door. This is how media like CDs, DVDs,

27  and BDs are inserted into and removed from the drive. Where the disc drive is intended for internal

28  use in a computer, the sides of the drive have pre-drilled, threaded holes for easy mounting in the

1   drive bay in the computer case. In that case, the optical drive is mounted so the end with the

2   connections faces inside the computer and the end with the drive bay faces outside. The back end

3   of the optical drive generally contains a port for a cable that connects to the motherboard. Also here

4   is a connection for power from the power supply. Most optical drives also have jumper settings on

5   the back end that define how the motherboard is to recognize the drive when more than one is

6   present. These settings vary from drive to drive.

### B.   Industry Background

8       61.   The optical disk was invented in 1958. In 1961 and 1969 patents were registered for

9   the analog optical disk for video recording. In 1969 Philips began their first optical videodisk

10   experiments. The first optical disk drive was invented with the creation of the audio compact disc

11   (audio "CD"), which was jointly invented by Sony and Philips Electronics ("Philips") and intended

12   to store analog video signals and store music and computer software. In 1972, Philips announced a

13   technique for storing audio recordings on an optical disc with a small diameter. At the same time,

14   Sony was exploring optically recording audio on a larger disc but was focusing on developing an

15   error correction technique. In 1978, Sony and Philips agreed on a single format for the disc and the

16   error correction method that would be used. The compact disc system was introduced to the public

17   in Japan and Europe in 1982. Since the 1980s, several companies have created spin-offs of the CD

18   project by covering specific CD-based applications and extending the previously established

19   standards set by Sony and Philips.

20       62.   According to reporters who cover the Optical Disk Drive Products market, the

21   history of the industry, "although short, has been intense." The first-generation of optical disk

22   drives used CDs that could store 650 megabytes of data, but for several years the CDs were

23   available only in a read-only format (e.g. CD-ROMs). Once the standard of how to create a CD and

24   an optical device that reads the information on the CD were established, CD-ROM drives began to

25   penetrate the computer market. Optical disc drives have been in common use in computers since

26   the 1990s, when CD-ROM drives became affordable for the average consumer. In the mid-1990s, a

27   consortium of manufacturers developed the second generation of the optical disk, the DVD. The

28   second-generation of drives used DVDs that could store 4.7 gigabytes, but DVDs were more

---

CLASS ACTION COMPLAINT                                                                14

1   quickly available in both a read-only format (e.g. DVD-ROMs) and a format that allowed both

2   reading and recording (e.g. DVD-RWs, DVD-RAMs). The DVD was intended to store great

3   amounts of data, including broadcast quality digital video. Optical disk drives using DVDs are

4   currently the most prevalent in both consumer electronics products and computers, but DVD drives

5   are now being replaced by the third-generation of optical disk drives.

6        63.     The third-generation of drives use Blu-Ray Discs (BDs) that can store in excess of

7   20 gigabytes, and also have both read-only and read/record formats. (Toshiba developed and

8   promoted a High-Definition ("HD")-DVD format for third-generation optical disk drives, but in

9   June 2008 Toshiba announced that it would no longer develop or manufacture optical disk drive

10  using HD-DVDs, and would instead use the Blu-Ray Disc format developed and promoted by

11  Sony.) In 2006, the specifications for the third generation optical disc, the Blu-Ray Disc format,

12  was finalized. The Blu-ray standard was developed by the Blu-Ray Disc Association, an industry

13  group which included makers of consumer electronics, computer hardware, and motion pictures.

14  The Blu-Ray format was designed to supersede the DVD format and dramatically improve on the

15  quality and capacity of the DVD. The Blu-Ray optical disc was meant to be able to distribute high-

16  definition video and support greater data storage capacity than the DVD. Afterwards,

17  manufacturers began to develop optical disc drives for computers that could read and write both

18  DVDs and Blu-Ray discs. The third generation optical disks, Blu-ray and HD-DVD began in

19  development in 2000 and were meant for distributing high-definition video and support greater data

20  storage capacities.

21       64.     Throughout the industry's history, but especially after 2000, the optical disk drive

22  market, which requires significant technical resources and advanced manufacturing capabilities, has

23  been dominated by a small group of manufacturers. The industry has also consistently been faced

24  with downward pricing pressures, including those resulting from the technological advances in

25  optical disk drive technology described above. As the defendants hone their ability to manufacture

26  these Optical Disk Drive Products more efficiently and at a lower cost, the price of this technology

27  invariably begins to decline. However, the defendants, sensing that the price of Optical Disk Drive

28  Products was declining, decided to collude and enter into a price fixing agreement in order to

1   prevent prices from dropping too far. , the optical disk drive market is particularly conducive to the
2   collusive conduct alleged herein.

3   65.     Today, optical disk drives are a standard component on almost every computer used
4   in the United States.  Due to the increasing popularity of personal computers, hundreds of millions
5   of optical disk drives and Optical Disk Drive Products are shipped by defendants each year,
6   generating billions of dollars in annual revenues.  According to an IDC analysis, between 2004 and
7   2008, worldwide optical disk drive shipments generated over $45 billion in revenues.  Digitimes
8   research estimates that worldwide optical disk drive shipments increased at an annual rate of
9   approximately 10%, exceeding 300 million by 2007.  Between 2004 and 2008, the sale of Optical
10  Disk Drive Products generated over $45 billion in revenues.  Since the optical disk drives market is
11  dominated by a group of manufacturers and it is oligopolistic in nature, the market is conducive to
12  the collusive conduct alleged herein.

13  66.     Optical disk drives are an integral part of stand-alone consumer electronics
14  appliances such as CD players, DVD players/recorders, and Blu-Ray Disc players that are used to
15  play (and record) music and movies.

16  67.     Optical disk drives, such as CD-ROM (read-only memory) drives and DVD-RW
17  (read/write) drives, are also widely used in computers to read and write data for a variety of uses,
18  including software programs and data compilations, as well to store and play music and video in
19  much the same way as in stand-alone consumer electronics products with optical disk drives.

20  **C.      Opportunity for Collusion**

21  68.     During the Class Period, the optical disk drive industry has experienced several
22  factors that have contributed to the opportunity for defendants and their co-conspirators to carry out
23  their conspiracy, including but not limited to: (1) market concentration, (2) joint venture
24  collaborations; (3) significant barriers to entry; (4) common trade associations and business
25  organizations; and (5) the standardization of Optical Disk Drive Products.

26  **1.      Market Concentration and Joint Ventures**

27  69.     Since the Optical Disk Drive Products market is dominated by a group of
28  manufacturers and it is oligopolistic in nature, the market is conducive to the collusive conduct

1  alleged herein. According to published reports, during the Class Period, the Optical Disk Drive

2  Products industry has been dominated by Defendants and their Co-Conspirators. During the Class

3  Period the joint venture between Hitachi and LG Electronics, Hitachi-LG Data Storage, had a 27%

4  market share; the joint venture between defendants Toshiba and Samsung, defendant Toshiba

5  Samsung Storage Technology had a 20% market share; defendant Sony Optiarc America had a 17%

6  market share; and Co-Conspirator Philips & Lite-On Digital Solutions Corporation had a 30%

7  market share. Together these defendants and Co-conspirators control over 90% of the global

8  market for Optical Disk Drive Products.

9  ## 2. Joint Venture Collaboration

10  70.  In October of 2000 Hitachi, Ltd., and LG Electronics Inc. joined together to form

11  Hitachi-LG Data Storage, Inc. ("HLDS"), a joint venture company for the development, design and

12  marketing of optical disk drives. HLDS is majority owned by Hitachi in a 51/49 percent equity split

13  with its headquarters in Tokyo.

14  71.  In April of 2003 Samsung Electronics and Toshiba Corporation signed a

15  memorandum of understanding. In January 2004 Samsung and Toshiba concluded an agreement to

16  integrate their optical disk drive businesses into a single entity. In April 2004 Toshiba Samsung

17  Storage Technology Corp and its Korean subsidiary were launched to develop, market and design

18  optical disk drives.

19  72.  In April of 2006, Sony Corporation and NEC Corporation joined forces to create

20  Sony NEC Optiarc Inc. At the formation of the joint venture, Sony had a 55% equity share and

21  NEC 45% and was projected to capture 20% of the optical disk drive market. On September 11,

22  2008, Sony purchased NEC Corp.'s interest in Sony NEC Optiarc, Inc., and renamed it Sony

23  Optiarc, Inc.

24  73.  In 2006, Lite-On IT acquired BenQ's Optical Disc Drive business to become the

25  second largest optical disc drive manufacturer in the world. Lite-On bought out the BenQ shares

26  under the deal and the joint venture was renamed Philips & Lite-On Digital Solutions.

27  74.  The joint ventures of each of these companies allowed them to share and have access

28  to each of their parent companies patents and technologies without the need to pay royalties.

### 3.    Barriers to Entry

75.    There are significant manufacturing and technological barriers to entry into the optical disk drive industry.  In order to compete in the optical disk drive industry, companies have to spend hundreds of millions of dollars in research and development, licensing, and manufacturing of products.  Moreover, the ownership and control exerted by defendants over Optical Disk Drive Product technology and market share has allowed defendants to dictate who enters the market and at what cost.  These barriers to entry have made it extremely difficult for smaller manufacturers of Optical Disk Drive Products to compete with defendants and overcome the effects of economies of scale.  Accordingly, the financial structure of the optical disk drive industry allowed defendants to implement their antitrust conspiracy by eliminating competition and artificially stabilizing the prices of Optical Disk Drive Products without losing market share.

### 4.    Trade Associations and Business Organizations

76.            Defendants acted to prevent downward pricing pressures from having Optical Disk Drive Products sold at truly competitive prices, through means including through price-fixing, bid-rigging and market allocation.

77.    Various industry trade organizations or events facilitated Defendants' Optical Disk Drive Products cartel activities.  Defendants participated in many of those meetings and events to discuss Optical Disk Drive Products pricing and production with the purpose and effect of raising, fixing and stabilizing Optical Disk Drive Products prices.  Such meetings occurred at or through the following industry trade associations and events:

78.    The Optical Storage Technology Association (OSTA), an international trade association formed in 1992 to promote the use of recordable optical technologies and products, and whose membership includes optical product manufacturers who represent more than 85 percent of worldwide writable optical product shipments, including LG and Sony.

79.    The DVD Forum, a global group of hardware manufacturers, software firms and content providers formed in 1997 to promote and improve standards for the DVD format and products associated with that format.  Hitachi, LG, Lite-On, NEC, Philips, Samsung, Sony, and Toshiba are all members of the DVD Forum.

80.     The Blu-ray Disc Association, a worldwide group formed in 2005 to promote the Blu-ray Disc format and products associated with that format, with members including Hitachi, LG, NEC, Philips, Samsung, Sony, Toshiba.

81.     Defendants Sony, LG, and Hitachi are all founding board members of the Blu-ray Disc Association which is an industry consortium that develops and licenses Blu-ray Disc Technology.  The Blu-ray Disc Association was established by the defendants to establish standardized formats and cross license technology.

82.     Defendants Sony, LG, Hitachi, and Samsung all participated in the first meeting of Blu-ray Disk patent owners in Los Angeles, California on July 6-7, 2006.  The states purpose of the event was to create joint licensing agreements amongst the participating optical disk drive manufacturers.

83.     The International Consumer Electronics Show, the world's largest consumer electronics show, held annually.

84.     The Optical Storage Symposium (OSS), a worldwide conference held annually from 2001-07.

85.     The conduct of the "business" of these organizations gave Defendants and their co-conspirators the cover needed to contact one another to communicate competitive information.

### 5.     Standardization of Optical Disk Drive Products

86.     Since its inception in the 1970s, the optical disk drive industry has been typified by standardization of discs (e.g., CD-ROMs, DVD-ROMs) and Optical Disk Drive Products driven by industry participants and a variety of industry-related organizations such as ECMA International, the International Standardization Organization ("ISO"), and the International Electrotechnical Commission ("IEC").  These organizations and their members are dedicated to "standardizing the use of information communication technology and consumer electronics."

87.     The optical disk drive industry is also subject to patents and intellectual property rights which require adoption of standardized product specifications.

88.     The standardization of the Optical Disk Drive Products industry provided defendants with the mechanism to implement, enforce, and oversee their anticompetitive conspiracy to fix the

1 price of Optical Disk Drive Products. Furthermore, as a result of this standardization, Optical Disk

2 Drive Products are commodity products, and buyers make decisions to purchase such products

3 based largely, if not exclusively, on price.

4      **D.     History of Collusion**

5           **1.     Previous Antitrust Violations**

6      89.     Defendants have been the subject of multiple government investigations for their

7 cartel activity in recent years. For example, Samsung admitted guilt and paid a $300 million fine

8 following an investigation by the DOJ into price-fixing among manufacturers of dynamic random

9 access memory ("DRAM") computer chips.

10      90.     Many of the Defendants named herein, have a long history of collusion, and, are

11 either currently involved in worldwide investigations into other technology-related products, or

12 have admitted to participating in cartels involving technology-related products.

13      91.     In November of 2007, the EU fined Sony and various related entities and the Hitachi

14 Maxell Limited joint venture $110 million for fixing the prices of professional videotapes sold in

15 Europe between 1999 and 2002. Similarly, Hitachi and Toshiba were fined by the European

16 Commission for their roles in a conspiracy to control prices and allocate market shares in the market

17 for gas-insulated switchgear between 1988 and 2004.

18      92.     More recently, the DOJ and the European Commission ("EC") have commenced

19 investigations of Samsung, Toshiba, LG and Hitachi, among others, concerning collusion among

20 manufacturers of thin-film transistor liquid crystal displays ("TFT-LCDs").

21      93.     In December of 2008, the Department of Justice ("DOJ") announced that LP

22 Display, a joint venture between LG and Philips, would plead guilty to a DOJ indictment alleging

23 antitrust price-fixing allegations with respect to TFT-LCDs. It has agreed to pay a $400 million fine.

24      94.     On March 10, 2009, the DOJ announced that Hitachi Displays had pled guilty to

25 participation in the price-fixing conspiracy involving TFT-LCDs and had agreed to pay a $31

26 million fine.

27      95.     Although it has not been publicly acknowledged by Samsung, it is widely believed

28 that defendant Samsung Electronics Co. Ltd. is in the U.S. DOJ leniency program with respect to

1  the DOJ's investigation into the market for TFT-LCD, meaning that it has admitted its participation

2  in the cartel. The TFT-LCD investigation is ongoing, and Toshiba Corporation, as well as other

3  entities, remain under investigation. Such criminal investigation is being conducted by the San

4  Francisco office of the DOJ's Antitrust Division.

5      96.    As in the TFT-LCD industry, many of the defendants here are not just the major

6  manufacturers and sellers of the price-fixed product, but they are also the major manufacturers and

7  sellers of the consumer electronics and computer products that contain the price-fixed product. For

8  example, the LG and Samsung entities manufactured and sold both TFT-LCD panels as well as

9  TFT-LCD flat panel televisions. Here LG and Samsung (and Hitachi, Toshiba, Philips, Lite-On and

10  Sony) manufacture and sell both optical disk drives (e.g. DVD drives) and finished products

11  containing those drives (e.g. DVD players, laptop computers).

12      97.    On October 7, 2009 in a cease and desist order, The Japan Fair Trade Commission

13  levied $37.4 million in fines against five companies, including LG Philips Displays Korea Co. and

14  an arm of South Korea's Samsung group and their affiliates for alleged participation in a price-

15  fixing cartel for cathode ray tubes.

16      98.    The optical disk drive industry has a similar oligopoly structure to that of the LCD-

17  TFT, DRAM and cathode ray industries. The Defendants' entry into price-fixing agreements in

18  those markets (which include many of the same foreign players) supports the DOJ's investigation

19  and other evidence showing the existence of an anticompetitive conspiracy in the Optical Disk

20  Drive Products market.

21      99.    The established illegal conduct of Hitachi, LG and Samsung (as well as Philips and

22  Sony) in a wide variety of product markets across the world, including the United States, is

23  illustrative of Defendants' respective corporate cultures which encourage illegal activities aimed at

24  furthering the company's bottom line at the expense of consumers.

25      100.   For example, in November of 2007, Kim Yong Chul, the former chief lawyer for

26  Samsung, admitted that the company "instructed me to commit crimes." Chul continued, "[a] basic

27  responsibility for all Samsung executives is to do illegal lobbying, buying people with money."

28  Chul also acknowledged that he fabricated court evidence on behalf of the company and its

CLASS ACTION COMPLAINT                                                              21

1 | executives, and several Samsung executives have recently been convicted of bribery and other
2 | white collar crimes.

3 | **2.      Antitrust Violations concerning Optical Disk Drive Products**

4 | 101.      Recently, defendants disclosed and news organizations reported that there is

5 | currently a worldwide investigation by antitrust enforcement authorities into violations of antitrust

6 | laws and other anticompetitive practices into the market for optical disk drives.  In October of 2009,

7 | the United States DOJ acknowledged that it had commenced an investigation into anticompetitive

8 | conduct in the optical disk drive industry, and that in connection with that investigation it had

9 | served subpoenas on defendants Sony Optiarc America, Hitachi-LG, and TSST.  At the same time,

10 | at least one defendant acknowledged that foreign antitrust enforcement agencies were also

11 | investigating the optical disk drive industry.

12 | 102.      For example, on October 23, 2009, Sony Corporation disclosed the following in a

13 | Form 6-K it filed with the SEC:

14 |       Sony Corporation said today that its U.S. subsidiary, Sony Optiarc America Inc.,
   |       has received a subpoena from the U.S. Department of Justice (DOJ) Antitrust
15 |       Division seeking information about its optical disk drive business.  Sony
   |       understands that the DOJ and agencies outside the United States are investigating
16 |       competition in optical disk drives.

17

18 | 103.      On October 26, 2009, news sources reported that other companies, including

19 | Toshiba, Hitachi, Samsung and LG have received DOJ subpoenas.  According to one of the news

   | articles, an unnamed "source said the department began the probe in recent months, investigating
20
   | disk-drive makers for possible price-fixing, bid-rigging and allocation of markets."
21
22 | 104.      Sony has acknowledged that it believes the request for information from the U.S.

23 | Department of Justice is part of a wider review of competition in the disk drive market by the DOJ

   | and competition authorities in other countries.
24
25 | 105.      On October 27, 2009, Hitachi Ltd. and Toshiba Corporation confirmed that, like

26 | Sony Corporation, their optical disk drive operations in the United States received subpoenas from

   | the U.S. Department of Justice in a widening investigation into potential antitrust violations.
27
28

1   Additionally, they acknowledged that they were also under investigation by European Union and

2   Singaporean antitrust regulators.

3       106.    On October 27, 2009, a United States DOJ spokeswoman, Gina Talamona confirmed

4   that, "[t]he antitrust division is investigating the possibility of anticompetitive practices in the

5   optical disc drive industry."

6       107.    On October 28, 2009, it was announced that two of the major players in the Optical

7   Disk Drive Products market, Sony and Philips, were fined by the a foreign antitrust enforcement

8   agency, the Taiwan Fair Trade Commission, for their anticompetitive business practices in

9   connection with their abuse of monopoly power in the licensing of the technology for CD-Rs, the

10  discs that go into optical disk drives.

11      108.    Pricing trends for the optical disk drive technology have not followed the traditional

12  price declination expected from an older technology.  In fact, despite HD-DVD vanishing from the

13  market, prices for Blu-Ray optical disk drives have remained substantially the same over time.

14      109.    It is significant that defendants' anticompetitive behavior has been the subject of a

15  criminal grand jury investigation by the DOJ.  In order for the DOJ to institute a grand jury

16  investigation, a DOJ Antitrust Division attorney must believe that a crime has been committed and

17  prepare a detailed memorandum to that effect.  *See* Antitrust Grand Jury Practice Manual, Vol. 1,

18  Ch. I.B.1 ("[i]f a Division attorney believes that a criminal violation of the antitrust laws has

19  occurred, he should prepare a memorandum requesting authority to conduct a grand jury

20  investigation.")  Furthermore, following a review of the memorandum, the request for a grand jury

21  must be approved by the Assistant Attorney General for the Antitrust Division, based on the

22  standard that a criminal violation may have occurred.  *See id.*  In addition, the fact that the DOJ

23  Antitrust Division investigation is criminal, as opposed to civil, is significant as well.  The Antitrust

24  Division's "Standards for Determining Whether to Proceed by Civil or Criminal Investigation"

25  state: "[i]n general, current Division policy is to proceed by criminal investigation and prosecution

26  in cases involving horizontal, per se unlawful agreements such as price fixing, bid rigging and

27  horizontal customer and territorial allocations."  *See* Antitrust Division Manual, Chapter III.C.5.

28

1   Accordingly, the existence of a criminal investigation into the ODD industry supports the existence

2   of the conspiracy alleged herein.

3       110.    On or about October 1, 2005, the exact date being unknown to plaintiff, Defendants

4   entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and

5   commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

6       111.    Defendants participated in meetings and conversations to discuss the price of Optical

7   Disk Drive Products sold in the United States.

8       112.    Defendants agreed during those meetings and conversations to charge prices at

9   specified levels and otherwise to fix, increase, stabilize and/or maintain prices of Optical Disk

10   Drives sold in the United States.

11      113.    Defendants agreed to sell Optical Disk Drive Products at the agreed upon prices.

12      114.    Defendants sold Optical Disk Drive Products to various customers throughout the

13   United States at artificially inflated prices.

14      115.    The conspiracy alleged herein had and continues to have the following effects,

15   among others.

16      116.    As a result of the illegal conspiracy, prices charged to plaintiff and the Class for

17   Optical Disk Drive Products have been raised, fixed, maintained or stabilized at artificially inflated,

18   non-competitive levels.

19      117.    As a result of the illegal conspiracy, plaintiff and the Class have been deprived of the

20   benefits of free, open and unrestricted competition in the market for Optical Disk Drive Products.

21      118.    As a result of the illegal conspiracy, competition in establishing the prices paid in the

22   United States and worldwide for Optical Disk Drive Products has been unlawfully restrained,

23   suppressed and eliminated.

24      119.    By reason of the violations of Section 1 of the Sherman Act and Section 4 of the

25   Clayton Act, plaintiff and the members of the Class have sustained injury.  As a direct result of

26   Defendants' conduct, the injury sustained by plaintiff and the Class is the payment of

27   supracompetitive prices for Optical Disk Drive Products.  This is an antitrust injury of the type that

28   the federal laws were meant to punish and prevent.

1 **VII. FRAUDULENT CONCEALMENT**

2      120.    Plaintiff and members of the Class did not discover and could not discover through

3 the exercise of reasonable diligence, the existence of the conspiracy alleged herein until October 26,

4 2009 when it was first publicly reported that manufacturers of optical disk drives were under

5 investigation by antitrust authorities in the United States, and elsewhere in the world, for

6 anticompetitive conduct.

7      121.    Because Defendants' agreements, understandings, and conspiracies were kept secret

8 until October 26, 2009, Plaintiff and members of the Class before that time were unaware of

9 Defendants' unlawful conduct alleged herein, and they did not know before that time that they were

10 paying artificially high prices for Optical Disk Drive Products throughout the United States during

11 the Class period.

12      122.    The affirmative acts of the Defendants alleged herein, including acts in furtherance

13 of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

14      123.    By their very nature, Defendants' price fixing conspiracy was inherently self-

15 concealing. The optical disk drives industry is not exempt from antitrust regulation, and thus,

16 before October 26, 2009, Plaintiff reasonably considered it to be a well-regulated competitive

17 industry.

18      124.    In the context of the circumstances surrounding Defendants' pricing practices,

19 Defendants' acts of concealment were more than sufficient to preclude suspicion by a reasonable

20 person that Defendants' pricing was conspiratorial. Accordingly, a reasonable person under the

21 circumstances would not have been alerted to investigate the legitimacy of Defendants' Optical

22 Disk Drive Products prices before October 26, 2009.

23      125.    Plaintiff and members of the Class could not have discovered the alleged contract,

24 conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the

25 deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators

26 to avoid detection of, and fraudulently conceal, their contract, combination or conspiracy.

27      126.    Because the alleged conspiracy was both self-concealing and affirmatively concealed

28 by Defendants and their co-conspirators, Plaintiff and members of the Class had no knowledge of

CLASS ACTION COMPLAINT                                                                    25

1   the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent

2   person to investigate whether a conspiracy existed, until October 26, 2009, when reports of the

3   investigations into price fixing in the optical disk drives industry were first publicly disseminated.

4         127.    None of the facts or information available to Plaintiff and members of the Class prior

5   to October 26, 2009, if investigated with reasonable diligence, could or would have led to the

6   discovery of the conspiracy alleged herein prior to October 26, 2009.

7         128.    Defendants also consummated affirmative acts of concealment of the conspiracy,

8   including, inter alia, periodically issuing press statements falsely asserting that Optical Disk Drive

9   Products were competitively priced.  For example, on June 4, 2007 Sony issued a press release

10  stating, "The player (Sony's Blu-Ray Disk Player) gives a broader consumer segment the

11  opportunity to experience the exceptional quality of Blu-ray format at a **competitive price**."

12  (emphasis added)

13        129.    As a result of Defendants' fraudulent concealment of their conspiracy, the running of

14  any statute of limitations has been tolled with respect to any claims that Plaintiff and members of

15  the Class have as a result of the anticompetitive conduct alleged in this Complaint.

16  **VIII.   INTERSTATE COMMERCE**

17        130.    During the Class Period, each Defendant, or one or more of its subsidiaries, sold

18  Optical Disk Drive Products in the United States in a continuous and uninterrupted flow of

19  interstate commerce and foreign commerce, including through and into this judicial district.

20        131.    During the Class Period, Defendants collectively controlled a majority of the market

21  for Optical Disk Drive Products, globally, in the United States and within this district.

22        132.    The business activities of the Defendants substantially affected interstate trade and

23  commerce in the United States and caused antitrust injury in the United States.

24        133.    Sony Optiarc Inc., had sales of $1.52 billion for the year ended March 2008, the last

25  year for which Sony disclosed the unit's annual revenue.

26        134.    Hitachi-LG Data Storage had revenue of $2.4 billion in 2005, the last year for which

27  figures are available, while Toshiba Samsung Storage forecast revenue of 250 billion yen in fiscal

28  2004 when it was established.

---

CLASS ACTION COMPLAINT                                                       26

1    135.    Samsung in 2008 estimated that the optical disk drive market for personal computers
2    is 313 million units per year and the optical disk drive market for all other applications (e.g.,
3    automotive audio and video, personal video recorders, set top boxes, CD/ DVD players and
4    recorders, camcorders, and game consoles) is 200 million units per year.

5    **IX.    CAUSES OF ACTION**

6    **First Claim for Relief**<br>**Violation of the Sherman Antitrust Act)**

7

8    136.    Plaintiffs reallege the paragraphs set forth above and incorporate them herein as if
9    fully alleged.

10    137.    Although the precise dates are not known to Plaintiff – but are known to defendant –
11    Plaintiff alleges upon information and belief that from as early as October 1, 2005, and continuing
12    through the present, Defendants and their co-conspirators entered into agreements, understandings,
13    and a conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for
14    Optical Disk Drive Products in the United States.  These agreements, understandings, and the
15    conspiracy violated Section 1 of the Sherman Act, 15 U.S.C. §1.

16    138.    Defendants' and their co-conspirators activities as alleged herein were within the
17    flow of, were intended to, and did have a substantial effect on the foreign and interstate commerce
18    of the United States.

19    139.    In entering into and conducting the conspiracy as agreed, Defendants and their co-
20    conspirators committed the acts they agreed to commit, including those specifically set forth herein
21    and additional acts and conduct in furtherance of the conspiracy, with the specific goals and intent:

22          a.    of fixing, raising, and maintaining the price of Optical Disk Drive Products;

23          b.    of allocating amongst themselves markets for Optical Disk Drive Products;

24          c.    of submitting rigged bids in order to secure and carry out certain Optical Disk
25                Drive Products contracts; and

26          d.    of allocating amongst themselves the production of Optical Disk Drive
27                Products.

28    140.    Among the effects of Defendants' and their co-conspirators acts have been:

a.  Restraint, suppression, and/or elimination of price competition in the sale of Optical Disk Drive Products in the Untied States;

b.  The raising, fixing, maintenance, and stabilization of prices at artificially high and non-competitive levels for Optical Disk Drive Products sold by Defendants and their co-conspirators in the United States; and

c.  The denial to consumers of Optical Disk Drive Products of the benefits of competition.

141.  Plaintiff and the members of the Class have been injured and will continue to be injured in their business and property by paying more for Optical Disk Drive Products purchased indirectly from Defendants and their co-conspirators than they would have paid and will pay in the absence of the combination and conspiracy, including paying more for personal computers, DVD players and other products in which Optical Disk Drive Products is a component as a result of higher prices paid for Optical Disk Drive Products by the manufacturers of those products.

142.  Plaintiff and the Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

**Second Claim**
**(Violation of the California Cartwright Act)**

143.  Plaintiffs reallege the paragraphs set forth above and incorporate them herein as if fully alleged.

144.  Defendants' acts in violation of federal and state antitrust laws and other laws as alleged herein were carried out, centered in, effectuated from and perfected largely within the State of California. Defendants' conduct within California injured all members of the Class throughout the United States. As a result, this claim for relief under California law is brought on behalf of all members of the Class, regardless of their residence and/or domicile.

145.  From at least as early as October 1, 2005, and continuing until the present, Defendants and their co-conspirators entered into and engaged in a continuing conspiracy in violation of Section 16720 of the California Business and Professional Code. Defendants and their co-conspirators acted in violation of Section 16720 to fix, raise, stabilize and maintain prices of, and

1    allocate markets for, Optical Disk Drive Products at prices in excess of what they would have been

2    absent Defendants' and their co-conspirators' conduct as alleged herein.

3         146.    The violations of Section 16720 of the California Business and Professions Code as

4    alleged herein comprised a continuing unlawful trust and concert of action between and among the

5    Defendants and their co-conspirators. The substantial terms of this unlawful trust were to fix, raise,

6    maintain and stabilize the prices of, and to allocate markets for, Optical Disk Drive Products.

7         147.    In carrying out this illicit trust and conspiracy, Defendants and their co-conspirators:

8              a.     fixed, raised, maintained, and stabilized the price of Optical Disk Drive

9                    Products;

10              b.     allocated markets for Optical Disk Drive Products among themselves;

11              c.     submitted rigged bids for the award and performance of certain Optical Disk

12                    Drive Products contracts; and

13              d.     allocated amongst themselves the production of Optical Disk Drive Products.

14         148.    Defendants' and their co-conspirators' actions caused:

15              a.     a restraint of price competition in the sale of Optical Disk Drive Products in

16                    the State of California and throughout the United States;

17              b.     The fixing of artificially high, non-competitive prices for Optical Disk Drive

18                    Products sold by Defendants and their co-conspirators in the State of

19                    California and throughout the United States; and

20              c.     Plaintiffs and the Class to be deprived of the benefit of free and open

21                    competition in the pricing of Optical Disk Drive Products.

22         149.    Plaintiffs and the other members of the Class paid higher prices for Optical Disk

23    Drive Products than they would have paid in the absence of Defendants' and their co-conspirators'

24    acts.

25         150.    Plaintiffs and the members of the Class have been injured in their business and

26    property as a direct and proximate result of Defendants' unlawful conduct because they paid more

27    for products containing Optical Disk Drive Products than they otherwise would have paid but for

28    Defendants' unlawful conduct. Plaintiffs and the Class seek treble damages and the costs of the

CLASS ACTION COMPLAINT                                               29

1   suit, including reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business

2   and Professions Code, as a result of Defendants' and their co-conspirators' violations of Section

3   16720 of the California Business and Professions Code.

4                                  **Third Claim**
                  **(Violation of the California Unfair Competition Law)**

5

6       151.    Plaintiffs reallege the paragraphs set forth above and incorporate them herein as if

7   fully alleged.

8       152.    Defendants' acts in violation of federal and state antitrust laws and other laws as

9   alleged herein were carried out, centered in, effectuated from and perfected largely within the State

10  of California. Defendants' conduct within California injured all members of the Class throughout

11  the United States. As a result, this claim for relief under California law is brought on behalf of all

12  members of the Class, regardless of their residence and/or domicile.

13      153.    Beginning no later than October 1, 2005 and continuing through the present,

14  Defendants and their co-conspirators violated Section 17200 by engaging in acts of unfair

15  competition as alleged herein.

16      154.    This Claim is asserted pursuant to Sections 17203 and 17204 of the California

17  Business and Professions Code. Plaintiffs and the class seek restitution from Defendants for the

18  acts alleged herein which violate Section 17200 of the California Business and Professions Code.

19      155.    The acts of Defendants and their co-conspirators as set forth herein are unfair,

20  unlawful and/or fraudulent business acts or practices within the meaning of California Business and

21  Professions Code, Section 17200 and include, but are not limited to, the following:

22              a.      Violations of Section 1 of the Sherman Act;

23              b.      Violations of Section 16720, et seq., of the California Business and

24                      Professions Code;

25              c.      Other acts by Defendants and their co-conspirators as alleged herein which

26                      are otherwise unfair, unconscionable, unlawful or fraudulent within the

27                      meaning of Section 17200, California Business and Professions Code; and

28

156.     Plaintiff and each of the Class members are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which Defendants may have obtained as a result of such business acts or practices.

157.     Defendants' and their co-conspirators' unlawful and unfair business practices are believed to be continuing and there is no reason to believe that Defendants will not cease such conduct.

158.     The acts of Defendants and their co-conspirators as alleged herein have caused and continue to cause Plaintiff and the members of the Class to pay higher prices for products containing Optical Disk Drive Products than they would have paid but for these acts.  Plaintiff and the members of the Class suffered injury in fact and lost money or property as a result of such unfair competition.  This conduct violates §17200 of the California Business and Professions Code.

159.     Defendants and their co-conspirators have been unjustly enriched, and Plaintiffs and the Class are entitled to relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

**Fourth Claim**
**(Violation of State Antitrust and Unfair Competition Law)**

160.     Plaintiffs reallege the paragraphs set forth above and incorporate them herein as if fully alleged.

161.     By reason of the foregoing, Defendants have entered into agreements in restraint of the trade in violation of

       a.     Alabama Code §§ 8-10-1 et seq.

       b.     Arizona Revised Stat. §§ 44-1401 et seq.

       c.     District of Columbia Code Ann. §§ 28-4503 et seq.

       d.     Iowa Code §§ 553.1 et seq.

       e.     Kansas Stat. Ann. §§ 50-101 et seq.

       f.     Maine Rev. Stat. Ann. 10, §§ 1101 et seq.

| | | |
|---|---|---|
| 1 | g. | Michigan Com. Laws. Ann. §§ 445.773 et seq. |
| 2 | h. | Minnesota Stat. §§ 325D.52 et seq. |
| 3 | i. | Mississippi Code Ann. §§ 75-21-1 et seq. |
| 4 | j. | Nebraska Rev. Stat. §§ 59-801 et seq. |
| 5 | k. | Nevada Rev. Stat. Ann. §§ 598A et seq. |
| 6 | l. | New Mexico Stat. Ann. §§ 57-1-1 et seq. |
| 7 | m. | North Carolina Gen. Stat. §§ 75-1 et seq. |
| 8 | n. | North Dakota Cent. Code §§ 51-08.1-01 et seq. |
| 9 | o. | Pennsylvania common law. |
| 10 | p. | South Dakota Codified Laws Ann. §§ 37-1 et seq. |
| 11 | q. | Tennessee Code Ann. §§ 47-2-101 et seq. |
| 12 | r. | Vermont Stat. Ann. 9 §§ 2453 et seq. |
| 13 | s. | West Virginia §§ 47-18-1 et seq. and |
| 14 | t. | Wisconsin Stat. §§ 133.01 et seq. |

162. Class Members in each state listed above paid supra-competitive, artificially inflated prices for Optical Disk Drive Products. As a direct and proximate result of Defendants' unlawful conduct, such members of the Class have been injured in their business and property in that they paid more for Optical Disk Drive Products than they otherwise would have paid in the absence of the Defendants' unlawful conduct.

**Fifth Claim**
**(Violation of State Consumer Protection and Unfair Competition Laws)**

163. Plaintiffs reallege the paragraphs set forth above and incorporate them herein as if fully alleged.

164. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statues listed below.

165. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of

1       a.    Alaska Stat. §§ 45.50.471 et seq.

2       b.    District of Columbia Code §§ 28-3901 et seq.

3       c.    Florida Stat. §§ 501.201 et seq.

4       d.    Hawaii Rev. Stat. §§ 480 et seq.

5       e.    Idaho Code §§ 48-601 et seq.

6       f.    Kansas Stat. §§ 50-623 et seq.

7       g.    Louisiana Rev. Stat. §§ 51:1402 et seq.

8       h.    5 Maine Rev. Stat. §§ 207 et seq.

9       i.    Montana Code §§ 30-14-101 et seq.

10       j.    Nebraska Rev. Stat. §§ 59-1601 et seq.

11       k.    New Mexico §§ 57-12-1 et seq.

12       l.    New York Gen. Bus. Law §§ 349 et seq.

13       m.    North Carolina Gen. Stat. §§ 75-1.1 et seq.

14       o.    Oregon Rev. Stat. §§ 646.605 et seq.

15       p.    Rhode Island Gen. Laws. §§ 6-13.1-1 et seq.

16       q.    South Carolina Code Laws §§ 39-5-10 et seq.

17       r.    Utah Code §§ 13-11-1 et seq.

18       s.    9 Vermont §§ 2451 et seq.

19       t.    West Virginia Code §§ 46A-6-101 et seq.

20       u.    Wyoming Stat. §§ 40-12-105 et seq.

21      166.    Class Members in the states listed above paid supra-competitive, artificially inflated

22  prices for Optical Disk Drive Products. As a direct and proximate result of Defendants' unlawful

23  conduct, Plaintiff and the members of the Class have been injured in their business and property in

24  that they paid more for Optical Disk Drive Products than they otherwise would have paid in the

25  absence of Defendants' unlawful conduct.

26

27

28

**Sixth Claim**
**(Unjust Enrichment and Disgorgement of Profits)**

167.    Plaintiffs reallege the paragraphs set forth above and incorporate them herein as if fully alleged.

168.    As a result of the conduct alleged herein, defendants and their co-conspirators have been unjustly enriched through overpayments by Plaintiff and the other Class Members and the resulting profits.

102.    Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiff and the other Class Members.

103.    Plaintiff seeks disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for relief as follows:

(1)    That the Court determine that class treatment pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) is appropriate for the claims alleged herein under the Sherman Act, the California Cartwright Act, the California Unfair Competition Law, the state antitrust and unfair competition laws, and the common law;

(2)    That the Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, trust, understanding, conspiracy, or combination alleged herein, or from entering into any other conduct, contract, trust, understanding, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

(3)    That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

        i.    a restraint of trade or commerce in violation of section 1 of the Sherman Act;

        ii.    a violation of the California Cartwright Act;

1         iii.     a violation of the California Unfair Competition Law;

2         iv.     violations of the state antitrust and unfair competition laws; and

3         v.     acts of unjust enrichment.

4      (4)     That Plaintiff and the Class recover damages, as available under the law, and that a

5 judgment be entered in favor of Plaintiff and the Class jointly and severally against Defendants in

6 an amount to be trebled in accordance with applicable laws;

7      (5)     That Plaintiff and members of the Class be awarded restitution, including

8 disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and

9 acts of unjust enrichment;

10      (6)     That Plaintiff and members of the Class be awarded pre- and post- judgment interest

11 from and after the date of service of the initial complaint in this action;

12      (7)     That Plaintiff and members of the Class recover their costs of this suit, including

13 reasonable attorneys' fees as provided by law; and

14      (8)     That Plaintiff and members of the Class receive such other and further relief as the

15 nature of the case may require or as the Court deems just, equitable, and proper.

16 **JURY TRIAL DEMANDED**

17          Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury

18 of all of the claims asserted in this Complaint so triable.

19

20 Date April 20, 2010                     **PARISH & SMALL**

                                     A Professional Law Corporation

21

22                           By _William H. Parish_

23

24                               William H. Parish

                              Attorneys for Plaintiff

25

26

27

28